**Nannie D. HARPER, Plaintiff**

v.

**Arthur S. FLEMMING, Secretary of the Department of Health, Education and Welfare, Defendant.**

**Civ. No. 684.**

United States District Court
E. D. North Carolina,
Wilson Division.

June 28, 1960.

Francis E. Winslow, Rocky Mount, N. C., for plaintiff.

Irvin B. Tucker, Jr., Asst. U. S. Atty., Raleigh, N. C., for defendant.

BUTLER, District Judge.

This is an action brought under § 205 (g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a decision of the Secretary of the Department of Health, Education and Welfare, denying plaintiff's application for old-age insurance benefits under the Social Security Act.

On November 4, 1957, plaintiff filed with the Department of Health, Education and Welfare an application for old-age insurance benefits. The Department denied the application and, upon plaintiff's request for reconsideration, affirmed the initial determination. Thereupon, plaintiff requested a decision by a referee pursuant to regulations. 20

CFR § 403.709. On May 28, 1958, the referee rendered his decision affirming the initial determination, and finding that the income plaintiff received from her farm does not constitute "self-employment income". Plaintiff filed with the Appeals Council a request to review and reverse the referee's decision. On September 17, 1958, the Appeals Council denied plaintiff's request for review, and the referee's decision stands as the final decision of the Secretary on the claim. Thereupon, plaintiff instituted this action to obtain a review of such decision. The case is now before the Court on motions for summary judgment filed in behalf of the plaintiff and the defendant pursuant to Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A.

The issue here is whether income received by the plaintiff in 1956 and 1957 from the operation of her farm constitutes "self-employment income" within the meaning of § 211 of the Social Security Act, as amended, 42 U.S.C.A. § 411.[1]

The pertinent, uncontroverted facts are as follows:

### Facts

1. Plaintiff filed her application for old-age insurance benefits on November 4, 1957, and established her date of birth as May 31, 1886. She filed income tax returns in which she reported self-employment income of $1,867.63 for 1956, and self-employment income of $798.04 for 1957. If the income so reported was "self-employment income" within the meaning of the Social Security Act, the minimum requirement of six quarters of coverage was satisfied.

2. Plaintiff's income in 1956 and 1957 was received from the operation of her farm by the Trust Department of the Planters National Bank & Trust Company of Rocky Mount, Rocky Mount, North Carolina, acting under the terms of a written contract.

3. For each of the years 1956 and 1957 (and prior thereto) the Bank, as agent for the plaintiff, entered into a verbal arrangement with each sharecropper which provided that the sharecropper would produce farm products on the owner's land and that there would be material participation by the owner, acting through the Bank as her agent, in the management of production of the farm products; and the Bank, as agent for the owner, actually did materially participate in the management of production of the farm products.

4. The arrangement with each sharecropper provided that the plaintiff should furnish, and she did furnish, all the tools, feed, machinery repairs, equipment, veterinarian fees, and livestock; that she should pay, and she did pay, all the costs of production, except the cost of labor, which the sharecropper was obligated to furnish, and except one-half of the cost of fertilizer, seed, plants, pesticides, and fuel for curing tobacco, which was charged to the sharecropper after being paid for by the plaintiff; that the plaintiff by her agent, should, and her agent actually did, periodically advise and

1. 42 U.S.C.A. § 411, reads in part as follows:

"(a) The term 'net earnings from self-employment' means the gross income * * * derived by an individual from any trade or business carried on by such individual, less the deductions allowed * * * except that in computing such gross income * * *

"(1) There shall be excluded rentals from real estate * * * (including such rentals paid in crop shares) * * * unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall not apply to any income derived by the owner * * * if (A) such income is derived under an arrangement, between the owner * * * and another individual, which provides that such other individual shall produce agricultural or horticultural commodities * * * on such land, and that there shall be material participation by the owner * * * in the production ·or the management of the production of such * * * commodities, and (B) there is material participation by the owner * * * with respect to any such * * * commodity * * * *."

consult with each sharecropper as to when and what to plant, and how to cultivate, harvest and market the crops. The Bank, as agent for the plaintiff, made inspections on an average of eight times a month throughout the growing season, did all the marketing and kept all the accounts. Plaintiff furnished the working capital for the farming operations. The arrangement provided that the farm products be divided half and half between the plaintiff and the sharecropper. Each sharecropper repaid the advances made to him for his half of the production costs.

5. Plaintiff invested capital in cost of production in 1956 in the amount of $2,583.68, and in 1957 in the amount of $1,883.66, in addition to the advances made for the sharecropper's share of production costs.

### Conclusions of Law

 1. Plaintiff's income both in 1956 and 1957 was self-employment income from the trade or business of sharecrop farming, as distinguished from rentals from real estate including rentals paid in crop shares. It, therefore, follows that the referee erred in his decision that the income that plaintiff realized from her farm constituted rental income and does not constitute self-employment income.

2. In 1956 and 1957 and prior thereto, the plaintiff engaged in the trade or business of sharecrop farming and such trade or business may be carried on by the plaintiff, either personally or through agents or employees.[2]

3. The Bank was agent for plaintiff in carrying on her trade or business in 1956 and 1957, and materially participated in the management of the production of crops on plaintiff's farm.

4. Plaintiff's income in 1956 and 1957 was derived under an arrangement providing for material participation by the plaintiff in the management of production of the farm products, and the material participation in the production of the agricultural commodities on plaintiff's farm in 1956 and 1957 by the Bank, acting as agent for the plaintiff, inured to her benefit as "material participation by the owner" within the meaning of 42 U.S.C.A. § 411(a) (1) (A) and (B).[3]

### Decision

The plaintiff's motion for summary judgment is granted, and the defendant's motion for summary judgment is denied. The decision of the referee is reversed, and the case remanded to the Social Security Administration with direction to allow plaintiff's claim.

A Judgment will be entered accordingly.

---

2. The Old Age and Survivors Insurance Regulations relating to income derived by an individual from any trade or business carried on by such individual provide as follows: "The trade or business must be carried on by the individual, either personally or through *agents or employees*. (Emphasis added.) 20 CFR § 404.1051(b).

See, also, Federal Income Tax Regulations relating to self-employment taxes, No. 1.1402(a)–1–(2), which contain the identical provision.

